UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WAYNE E. BOULIER, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00250-JAW |
| | ) | |
| DOUG BLAUVELT, *in his official* | ) | |
| *Capacity as Major/Jail* | ) | |
| *Administrator*, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**PRELIMINARY ORDER ON RECOMMENDED DECISION, OBJECTION,
AND REQUEST FOR APPOINTED COUNSEL**

In a civil lawsuit brought against a county jail and its administrator, the court

holds in abeyance its final order on a federal magistrate judge's recommendation that

the district court grant the defendants' motion to dismiss claims of civil rights

violations against them for failure to administratively exhaust his claims and issues

a preliminary order for the plaintiff to clarify whether he complied with the

exhaustion requirement of the Prison Litigation Reform Act prior to filing his

complaint in federal court. As the issue of administrative exhaustion implicates the

plaintiff's request for appointment of counsel, the court also holds its ruling on that

motion in abeyance.

## I.    PROCEDURAL BACKGROUND

On July 12, 2024, Wayne E. Boulier, II, now or formerly an incarcerated

individual,[1] filed a civil complaint pursuant to 42 U.S.C. § 1983 against Doug

---

[1] When Mr. Boulier initiated his complaint on July 12, 2024, he was an inmate at Franklin
County Jail. *Compl. for Violation of Civ. Rights* at 1 (ECF No. 1). On August 8, 2024, the Clerk of

Blauvelt, as jail administrator of the Franklin County Sheriff Department, and the Franklin County Jail (together, the Defendants), alleging violations of his rights guaranteed under the Fourth and Eighth Amendments to the United States Constitution. *Compl. for Violation of Civ. Rights* at 1-3 (ECF No. 1). Mr. Boulier amended his complaint on September 19, 2024 to clarify his allegation that the Defendants allegedly subjected him to repeated unconstitutional strip searches during his period of incarceration in Franklin County Jail. *Am. Compl.* (ECF No. 20). Mr. Boulier elected to proceed in forma pauperis, *Appl. to Proceed in Dist. Ct. Without Prepaying Fees or Costs* (ECF No. 2), and a United States Magistrate Judge granted his in forma pauperis application on July 15, 2024. *Order Granting Mot. to Proceed Without Prepayment of Fees and Costs* (ECF No. 4).

On December 11, 2024, the Defendants jointly moved to dismiss Mr. Boulier's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted, alleging Mr. Boulier's claim was unripe because he had not exhausted his administrative remedies prior to filing his complaint in federal court as required by the Prison Litigation Reform Act (PLRA), codified at 42 U.S.C. § 1997e(a). *Defs. Doug Blauvelt's and Franklin Cnty.'s Mot. to*

---

Court received correspondence from Mr. Boulier stating that he had been transferred to Penobscot County Jail. *Correspondence* at 1 (ECF No. 10). Then, on August 22, 2024, the Clerk received a subsequent mailing in which Mr. Boulier informs the Court that he had been transferred to Knox County Jail. *Notice of Change of Address* (ECF No. 13). Most recently, in a letter to the Clerk dated March 7, 2025, Mr. Boulier said that he anticipated being sentenced on March 13, 2025 and thought he might be sent to the Maine Correctional Center on Mallison Falls Road in Windham, Maine. In this most recent notice of change of address, Mr. Boulier wrote that he would "notify the Court immediately of [his] arrival to a new facility," but provided his home address, where his wife currently resides, in Bangor for the Court's use in the interim. *Notice of Change of Address* (ECF No. 31). Mr. Boulier has not updated the Clerk's Office as to his current whereabouts, but the Clerk's Office will use his Bangor address, as he requested, until further notified by Mr. Boulier.

*Dismiss Pl.'s Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6)* (ECF No. 26) (*Defs.' Mot. to Dismiss*).  Mr. Boulier did not respond to the motion to dismiss, which the Court took under advisement on January 13, 2025.

On January 30, 2025, the Magistrate Judge recommended the Court grant the Defendants' unopposed motion to dismiss and dismiss Mr. Boulier's amended complaint for failing to state a claim on which relief may be granted due to his failure to exhaust administrative remedies.  *Recommended Decision on Mot. to Dismiss* (ECF No. 27) (*Rec. Dec.*).  Because a Magistrate Judge reviewed the Defendants' motion pursuant to 28 U.S.C. § 636(b)(1)(B), Mr. Boulier had a right to de novo review by the district judge upon filing an objection within fourteen days of being served.  *See* 28 U.S.C. § 636(b)(1)(C).  On February 18, 2025, Mr. Boulier objected to the Recommended Decision, stating that he never received the Defendants' motion to dismiss due to a postal error and that he first learned of the motion to dismiss upon receipt of the Recommended Decision.  *Obj. to Recommended Decision* at 1 (ECF No. 28) (*Pl.'s Obj.*).[2]  His objection asks the Court to overrule the Recommended Decision

---

[2] The Magistrate Judge issued his Recommended Decision on January 30, 2025, *Rec. Dec.*, and Mr. Boulier's objection to the Recommended Decision was not filed until February 18, 2025.  *Pl.'s Obj.* It is not clear from the docket on which day Mr. Boulier was served and, thus, the Court is unsure whether he filed his objection within fourteen days of service as 28 U.S.C. § 636(b)(1)(C) instructs. However, the First Circuit has directed district courts reviewing pro se pleadings to construe these submissions liberally, *see Sanchez v. Brown Univ.*, No. 23-1983, 2024 U.S. App. LEXIS 15530, at *1 (1st Cir. 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and has indicated its preference to "dispos[e] of claims on the merits rather than on the basis of technicalities."  *Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1994) ("Our federal rules promote the disposition of claims on the merits rather than on the basis of technicalities, and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits") (citing *Foman v. Davis*, 371 U.S. 178, 181-82 (1962)).  In line with the First Circuit's instructions, the Court in its discretion construes Mr. Boulier's objection as timely filed and reviews its contents for their merits, conducting a de novo review of the objected-to portions of the Recommended Decision.

on the grounds that, first, he did not have an opportunity to oppose the motion to dismiss given this mailing error, and, second, the Defendants are incorrect that he did not administratively exhaust before filing his complaint. *Id.* at 1-2.  Defendants responded to Mr. Boulier's objection on February 26, 2025.  *Resp. of Defs. Blauvelt and Franklin Cnty.[] [] to Pl.'s Obj. to the Mag. J.'s R. & R.* (ECF No. 29) (*Defs.' Resp.*). On March 12, 2025, Mr. Boulier replied, adding a request for appointed counsel.  *Pl. Resp. to Defs.' Resp. to Pl.'s Obj. to the Mag. J.'s R. & R.* at 11 (ECF No. 30) (*Pl.'s Reply*).

## II.    THE PARTIES' POSITIONS

### A.    The Magistrate Judge's Recommended Decision

The Magistrate Judge recommended the Court grant the Defendants' motion to dismiss, concluding that Mr. Boulier had not exhausted his administrative remedies before filing suit in this Court and further noting that Mr. Boulier did not file an opposition to dismissal.  *Rec. Dec.* at 1-4.  The Magistrate Judge also determined the Franklin County Jail is not a proper defendant in this suit, and "[p]erhaps recognizing that the Court might construe the amended complaint to assert claims against Franklin County, and acknowledging that Franklin County is responsible for the Sheriff's Office and thus the jail, Franklin County has moved for dismissal along with Defendant Blauvelt."  *Id.* at 1 n.1 (citing *Collins v. Kennebec Cnty. Jail*, No. 1:12-cv-00069-GZS, 2012 U.S. Dist. LEXIS 133928, at *11 (D. Me. May 31, 2012) (citation amended) ("The Kennebec County Jail is not a governmental entity or a proper party defendant to this lawsuit.  It is a building")).

4

The Magistrate Judge notes federal law requires a prisoner to exhaust all administrative remedies made available at the custodial facility before initiating a lawsuit in federal court pursuant to 42 U.S.C. § 1983. *Id.* at 2. "Specifically, '[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.'" *Id.* (quoting 42 U.S.C. § 1997e(a)) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court")). The Magistrate Judge states further that the United States Supreme Court has ruled § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies, which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006)).

Turning to the instant case, the Magistrate Judge concluded, "[h]ere, the record establishes that the Franklin County Jail had an administrative grievance process," which "contemplates an initial grievance to be decided by the jail administrator and, if unsuccessful, an appeal to the Department of Corrections [(DOC)]." *Id.* at 3 (citing *Defs.' Mot. to Dismiss*, Attach. 1, *Franklin Cnty. Jail Grievance Pol'y*). The Magistrate Judge observes that Mr. Boulier's amended complaint reports that he filed a relevant grievance on July 1, 2024, which Mr. Blauvelt, in his official capacity as jail administrator, denied the same day it was

filed. *Id.* (citing *Defs.' Mot. to Dismiss*, Attach. 2, *Boulier Grievance Form*). On July 12, 2024, Mr. Boulier filed his complaint in this Court. *Id.*

The Magistrate Judge deduced that "[w]hile the Court can reasonably infer from the short time that elapsed between the date the jail administrator denied the grievance and the date Plaintiff filed this action that [he] did not file an appeal to the Department of Corrections," a conclusion further supported by Mr. Boulier's failure or declination to object to the assertion in Defendants' motion to dismiss that the Plaintiff did not file such an appeal. *Id.* The Recommended Decision thus concluded that Mr. Boulier's failure to oppose the motion or to challenge the Defendants' assertion constitutes a waiver of objection to the Defendants' motion and the arguments contained within. *Id.* at 3-4 (citing D. ME. LOC. R. 7(b)).

The Magistrate Judge recommends the Court grant the motion to dismiss Mr. Boulier's amended complaint. *Id.* at 4.

### B.    Wayne E. Boulier, II's Objection

Mr. Boulier's objection to the Recommended Decision reports that he was "flustered in the midst of an anxiety attack because of the newly learned status of his 42 U.S.C. § 1983 Civil Rights Complaint." *Pl.'s Obj.* at 1. He explains that on December 14, 2024 he received an envelope, sent from the Defendants' attorneys through the U.S. Postal Service, which "was already previously opened, and affixed to it was a yellow 'post-it' note stating 'received open, noted in log,' [] dated 12/14/24, and signed by Knox County correctional staff 'Lamphere.'" *Id.* (discussing *id.*, Attach. 1, *Envelope from Wheeler & Arey*). Mr. Boulier says the envelope contained four

6

pieces of paper which he now understands were likely exhibits attached to the Defendants' motion to dismiss; he states that he did not receive the motion itself, and, at the time, "was confused, and since the contents were only of 'exhibits 1 and 2,' along with the certificate of service, [he] dismissed it, anticipating more to come, since there was no motion of any sort included." *Id.* Mr. Boulier reports "until receiving [the] Magistrate Judge's 'Recommended Decision on Motion to Dismiss' . . . [he] never received any 'Motion to dismiss,' or anything else for that matter," and thus argues he "wasn't afforded the opportunity to object since [he] was never properly informed of the Defendants' position on the matter." *Id.* at 1-2.

Mr. Boulier turns to the merits of the Defendants' motion to dismiss, which he states he understands from the Recommended Decision to be based on the Defendants' contention that he did not administratively exhaust as required by the PLRA. *Id.* at 2. The Plaintiff contends:

> Contrary to the Defendants' claim that all I filed was the one 'Inmate Grievance' on July 1st, on either 7/5 of 7/6 I did in fact write an appeal to the findings on the grievance, and not only did I write a very detailed appeal on 3 written pages, but I also included a photocopy of my original grievance, and the quite simply wrong findings of Defendant Blauvelt . . . which I then placed in a pre[-]stamp[]ed envelope and addressed it to 'Mr. Scott French Maine Dept. of Corrections 111 State House Station Augusta, Me. 04333' which was the name and address provided to me by C/O Brooks when I inquired of where to send my appeal.

*Id.* at 2.

Addressing the Magistrate Judge's inference that the twelve-day interim between Mr. Blauvelt's denial of Mr. Boulier's request on July 1, 2024 and Mr. Boulier's filing of his complaint in this Court on July 12, 2024 suggested he did not

file an administrative appeal before seeking relief in this Court, the Plaintiff explains "[his] decision to file the case [when he did] was made because when [he] requested a receipt, or a photocopy of the mail log of my letter to Mr. French . . . it was denied to [him] by Sgt. Coleman," and "it was at this time that the comment was made to [him] that 'the policy (in regard to strip searches) was what it is and if [he] didn't stop complaining about it, [he]'d be doing the rest of [his] time in segregation,' as [he] previously reported to the Court when [he] filed a 'motion for emergency injunction.'" *Id.* (referencing *Mot. for Inj.* (ECF No. 7)).[3]  Mr. Boulier says "[s]ince [he] was being expos[]ed to the unwarranted strip searches on almost a weekly basis . . . [he] felt the need to file this civil rights case, as what [he] felt to be the only way to get the proper attention for the very real violation of [his] Fourth Amendment rights that was repeatedly re-occurring." *Id.* at 2-3.  Given the jail administrator's denial of his request, the corrections officer's alleged refusal to provide a receipt of his appeal, and the retaliatory threat of segregation, Mr. Boulier says that he filed his complaint in this Court because "[he] felt [he] had no further options for relief." *Id.* at 3.

Mr. Boulier then restates the arguments advanced in his amended complaint that, while he understands the necessity of strip searches when an incarcerated

---

[3]    Mr. Boulier filed a motion for injunctive relief on July 26, 2024, *Mot. for Inj.* (ECF No. 7), which the Magistrate Judge recommended the Court deny on July 31, 2024.  *Recommended Decision on Mot. for Inj.* (ECF No. 8).  However, Mr. Boulier subsequently advised the Court that his motion for injunction was moot and, on September 4, 2024, the Magistrate Judge accordingly dismissed the motion for injunction as moot and withdrew his Recommended Decision.  *Order* (ECF No. 19) ("Plaintiff advised the Court that his pending motion for injunctive relief (ECF No. 7) is moot.  The motion, therefore, is dismissed as moot . . .  Because the motion is moot, the Recommended Decision addressing the motion (ECF No. 8) is withdrawn").  The Court does not address Mr. Boulier's motion for injunctive relief or the Magistrate Judge's Recommended Decision on that motion further.

individual is taken, for example, to an exterior section of the jail that outside visitors can access, he himself was subjected to strip searches after participating in meetings with his attorney over Zoom, conducted "in an office immediately adjacent to the booking area of the jail, a section no[t] access[i]ble by civilians," during of which he was immobilized by five-point restraints and "never left direct eye sight of correctional staff." *Id.* at 3-4. He proffers that these strip searches were thus unwarranted and their sole purpose was "to be humiliating to [him], and to exhibit power over [him] . . . , repeatedly, even after verbal insistence was made by correctional staff that the searches were not warranted." *Id.* at 4.

In conclusion, Mr. Boulier asks the Court to deny the Recommended Decision and consider his objection as an opposition to the motion to dismiss. *Id.* at 4.

### C.    The Defendants' Response

Defendants respond that they mailed a copy of their motion to dismiss, along with the two exhibits and certificate of service described in Mr. Boulier's objection, to the Plaintiff via first class mail on December 11, 2024, and that this envelope contained the motion to dismiss when it left defense counsel's office. *Defs.' Resp.* at 1. They proffer "[t]his is evidenced by the envelope that the Plaintiff attached to his objection . . . which contains an 'additional ounce' stamp," postage they assert "was required in order for the U.S. Post Office to accept the envelope due to its weight, which contained all of the documents listed above." *Id.* at 1-2.

Even if the Court construes Mr. Boulier's objection as a timely opposition to their motion to dismiss, Defendants say, "dismissal is still appropriate" because the

Plaintiff's assertion that he filed an appeal was not included in his amended complaint and, thus, cannot be considered by the Court in ruling on a motion to dismiss. *Id.* at 2 (citing, e.g., *Davis v. Theriault*, 1:22-cv-00275-JDL, 2023 U.S. Dist. LEXIS 153902, at *92 (D. Me. Aug. 31, 2023) ("Parties cannot cure deficiencies in pleadings by asserting new facts and allegations in response to a motion to dismiss") (citation and quotation amended)). Defendants maintain "as the case now stands, the Amended Complaint fails to allege that Boulier exhausted his administrative remedies," and the Plaintiff's "after-the-fact contention does not cure this fact." *Id.*

### D.    Wayne E. Boulier, II's Reply[4]

After reminding the Court that he is acting without the assistance of counsel, Mr. Boulier reasserts that, "[f]rom the very beginning of [his] complaint, . . . [he] objected to the strip searches that were being done on [him] following Zoom hearings, in five[-]point restraints, under constant observation of Franklin County Jail officers, while never leaving the booking area of the jail." *Pl.'s Reply* at 1. When his attempts to seek administrative redress "proved fruitless," Mr. Boulier says he turned to the Court. *Id.* at 1-2.

---

[4]    Pursuant to Federal Rule of Civil Procedure 72, a party "may serve and file objections to the order within 14 days after being served with a copy." The District of Maine Local Rules specify that "[e]xcept by prior order of the Court, no reply memorandum shall be filed." D. ME. LOC. R. 72(a). Mr. Boulier has neither sought nor been granted leave to file a reply memorandum. Nevertheless, and given the unconventional procedural posture of this motion sequence, the Court in its discretion considers Mr. Boulier's reply but reminds him that, if he wishes to file such a reply in future, he must first seek leave of the Court. *See Sanchez*, 2024 U.S. App. LEXIS 15530, at *1 (instructing district courts reviewing pro se filings to do so liberally); *Kuehl*, 8 F.3d at 908 ("Our federal rules promote the disposition of claims on the merits rather than on the basis of technicalities, and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits").

He rejects the Defendants' skepticism towards his description of the envelope he received, insisting "[i]f [defense counsel's] statement [that the envelope contained the motion to dismiss when it left their office] is true, as it very well may[ ]be, how it leaves their office, is not how it arrived to [him] at the Knox County Jail." *Id.* at 3. Mr. Boulier argues that "[s]ince [he] didn't receive the defendants['] motion to dismiss, and didn't even realize one existed until [he] receive[d] [the Recommended Decision], [he] was never afforded the opportunity to respond in a timely manner pursuant to 28 U.S.C. § 636(b)(1)(B)." *Id.* He emphasizes "[he has] still not received, or even had the opportunity to read the defense[']s motion to dismiss." *Id.*

Next, Mr. Boulier contends that, from what he has gathered from the Recommended Decision, the Defendants' argument that he failed to administratively exhaust "is wrong" because he filed a grievance with Mr. Blauvelt and, upon denial, filed an appeal to the DOC. *Id.* at 3-4. The Plaintiff also rejects the Defendants' contention that, even if he did file such an appeal, it is immaterial for purposes of the motion to dismiss because it was not first raised in his complaint or amended complaint. *Id.* at 4. On this issue, Mr. Boulier insists that "[he] absolutely did refer to [his] grievance, and in fact [he] even included a copy of the only one that [he] had received an answer for," adding that while he "may have not described in detail [] [his] letter to Mr. French, [] [he] was clear that the grievance process was denied, and in [his] motion for emergency injunctive relief, [he] made it very clear [he] had exhausted all relief options." *Id.* at 4-5. Mr. Boulier adds that the pro se complaint template he used "clearly states to briefly state [a] complaint," and he did not

11

understand he needed to provide more detail than he did. *Id.* at 5. Mr. Boulier complains of a systemic fallacy, asking "[h]ow could anyone ever 'exhaust [their] administrative remedies' if any appeal letter to DOC never gets mailed out, logged, or given receipt of?" *Id.* at 9.

Acknowledging that he "absolutely see[s] the need, as well as value[,] of strip searches within a correctional facility environment . . . [to] prevent potential weapons from making their ways in [and] stop drugs from being induced," *id.* at 7, and alleging he has personally undergone "upwards of probably one hundred or more strip searches throughout [his] life," Mr. Boulier asserts "the strip searches that took place at Franklin County [Jail] were not in the interest of the safety and security of the institution, but were done to show [him] who was boss, in a blatant disregard of [his] Fourth Amendment protections, that [he has] never complained of any time before." *Id.* at 11. He also notes that his history of sexual abuse, a fact corrections officers at Franklin County Jail were aware of, made these recent strip searches especially traumatic. *Id.* at 6.

Mr. Boulier concludes by requesting the opportunity to show that he administratively exhausted before filing his complaint in court, and requests, "[i]f the Court sees fit, [that] counsel may be appointed [] to protect [his] interests." *Id.* at 9, 11.

## III. LEGAL STANDARD

The Plaintiff filed a timely objection to the Magistrate Judge's Recommended Decision, and the Court thus "shall make a de novo determination of those portions

12

of the . . . recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* 28 U.S.C. § 636(b)(1)(B).  At the same time, the Court is "only obliged to perform de novo review of disputed portions of the report and recommendation." *United States v. J.C.D.*, 861 F.3d 1, 6 (1st Cir. 2017).  Under this standard, the Court reviews factual findings for clear error, *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999), and gives plenary review to pure questions of law.  *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

## IV.    DISCUSSION

### A.    Administrative Exhaustion

The Court begins by addressing the unusual procedural posture of the motion sequence this order addresses.  On September 19, 2024, Mr. Boulier, acting pro se, filed an amended complaint in this Court pursuant to 42 U.S.C. § 1983, alleging a jail administrator and county jail violated his constitutional rights by subjecting him to strip searches during his period of incarceration. *Am. Compl.*  The Defendants jointly moved to dismiss on December 11, 2024, *Defs.' Mot. to Dismiss*, and based on the Plaintiff's failure to respond during the prescribed period, the motion was subsequently taken under advisement without opposition.

The Magistrate Judge recommended the Court grant the motion to dismiss, concluding Mr. Boulier had failed to administratively exhaust as the PLRA requires and further noting that arguments contrary to the motion to dismiss had been waived. *Rec. Dec.* at 1-4.  Then, on February 18, 2025, Mr. Boulier filed an objection to the Recommended Decision, alleging he was not properly served with that same

13

motion and asking the Court to construe his filing as an opposition to the Defendants' motion to dismiss. *Pl.'s Obj.* Moreover, Mr. Boulier rejected the Defendants' contention that he had failed to administratively exhaust, asserting he appealed Mr. Blauvelt's denial of his administrative grievance to the DOC several days before filing his complaint. *Id.* The Defendants subsequently opposed the Plaintiff's objection on the grounds that his amended complaint did not assert he exhausted his administrative remedies, *Defs.' Resp.* at 2, and Mr. Boulier filed a reply contending his amended complaint in fact did address administrative exhaustion. *Pl.'s Reply* at 4.

42 U.S.C. § 1997e(a) provides "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).

In the case at bar, parties do not dispute that Mr. Boulier's § 1983 claim is an action "with respect to prison conditions" under § 1997e(a). *See Porter*, 534 U.S. at

14

532 (holding that the PLRA's exhaustion requirement extends to "all inmate suits about prison life").   The dispute concerns whether Mr. Boulier has established satisfaction of the statute's exhaustion requirement by the time he filed his suit in this Court, and, alternatively, whether those administrative procedures were "available" to him for purposes of § 1997e(a), due to the alleged futility of pursuing an administrative appeal.

The Court addresses the second issue first.  Mr. Boulier alludes to the practical availability of administrative relief in his objection to the recommended decision and in his reply, arguing that he took steps to appeal Mr. Blauvelt's denial of his grievance on either July 5, 2024 or July 6, 2024 but, given his concern that his appeal was not properly mailed and that continuing to pursue administrative redress would be futile, he promptly moved for relief in this Court on July 12, 2024.  *See Pl.'s Reply* at 2 ("As I said in my previous response, I decided to fil[e] my complaint with the court the day I learned there was no record of my letter to DOC in the Franklin County Mail log, and I was told in an aggressive tone by Sgt. Coleman that if I kept pushing the issue, I'd be doing it from segregation or maximum security housing"); *id.* at 9 ("How can anyone ever 'exhaust [their] administrative remedies' if any appeal letter to DOC never gets mailed out, logged, or given receipt of?").   Based on Mr. Blauvelt's denial of his request on the same day it was submitted, the corrections officer's alleged refusal to provide a receipt of his appeal, and the retaliatory threat of transfer or involuntary segregation, Mr. Boulier says that he filed his complaint in this Court because "[he] felt [he] had no further options for relief."  *Id.* at 3.

15

Although some statutes allow futility as a defense to exhaustion of administrative remedies, the First Circuit has concluded that the PLRA is not one of them. *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) ("there is no 'futility exception' to the PLRA exhaustion requirement") (quoting *Massey v. Wheeler*, 221 F.3d 1030, 1034 (7th Cir. 2000); citing *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the PLRA mandates exhaustion regardless of the relief offered through administrative procedures)). Thus, Mr. Boulier's argument that the PLRA's exhaustion requirement should be waived for futility is unavailing. *Medina-Claudio*, 292 F.3d at 35; *accord Porter*, 534 U.S. at 524 ("exhaustion in cases covered by § 1997e(a) is . . . mandatory").

The Court returns to the first issue of whether Mr. Boulier has established he satisfied the PLRA's administrative exhaustion requirement before filing his complaint. Upon reviewing the policies and procedures for inmate grievances attached by the Defendants to their motion to dismiss, the Magistrate Judge concluded the Franklin County Jail's administrative grievance process "contemplates an initial grievance to be decided by the jail administrator and, if unsuccessful, an appeal to the Department of Corrections." *Rec. Dec.* at 3 (citing *Franklin Cnty. Jail Grievance Pol'y*). The Magistrate Judge "reasonably infer[red] from the short time that elapsed between the date the jail administrator denied the grievance [on July 1, 2024] and the date Plaintiff filed this action [on July 12, 2024] that Plaintiff did not file an appeal to the Department of Corrections." *Id.* Mr. Boulier objected to the Magistrate Judge's conclusion, contending he appealed Mr. Blauvelt's denial to the

DOC on July 5, 2024 or July 6, 2024. *Pl.'s Obj.* at 2. Mr. Boulier admits he does not have evidence of this appeal but explains "[his] decision to file the case [in this Court] was made because when [he] requested a receipt, or a photocopy of the mail log of my letter to Mr. French . . . it was denied to me by Sgt. Coleman." *Id.*

In short, the parties agree that Mr. Boulier properly filed an initial grievance with Mr. Blauvelt on July 1, 2024, which was denied the same day, *Rec. Dec.* at 3 (citing *Boulier Grievance Form*), and that on July 12, 2024, Mr. Boulier filed a complaint in this Court. *Compl.* Mr. Boulier alleges that he attempted to mail an appeal to the DOC on July 5, 2024 or July 6, 2024. *Pl.'s Obj.* at 2. Over the Defendants' objection, and for the purposes of this order, the Court takes Mr. Boulier at his word that he intended to appeal the jail administrator's denial.[5] However, neither party has told the Court whether the DOC received Mr. Boulier's appeal, and, if it did, whether Mr. Boulier had received DOC's decision on his appeal at the time he filed his complaint. The First Circuit has held that the language of 42 U.S.C. § 1997e(a) "clearly contemplates exhaustion *prior* to the commencement of the action as in indispensable requirement," *Medina-Claudio*, 292 F.3d at 36 (emphasis in original) (collecting cases from other federal circuit courts), and that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed;

---

[5]     Defendants contend the Court should not consider Mr. Boulier's claim that he administratively exhausted based on their allegation that he did not address exhaustion in his amended complaint and, in ruling on a motion to dismiss, the Court is bound to consider the factual record as stated in that filing. *Defs.' Resp.* at 2. Defendants are incorrect in their factual assertion that Mr. Boulier did not discuss administrative exhaustion in his amended complaint. *Am. Compl.* at 10 ("I did in fact attempt to bring light to the above mentioned violation of my Fourth Amendment rights, by and through the administrative remedy process").

the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Id.* (quoting *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999)).

"The conclusion that dismissal is the appropriate remedy [when a prisoner has failed to administratively exhaust before commencing suit] is further bolstered by the significant change effected by the PLRA to the language of its predecessor statute," the First Circuit observed. *Id.* While an earlier version of § 1997e(a) allowed a district court to continue a pending § 1983 case for up to 180 days so that a prisoner could be given an opportunity to exhaust certain administrative remedies, the "1996 [] PLRA eliminated any reference to allowing for the continuance of an action." *Id.* (*comparing* 42 U.S.C. § 1997e(a)(1) (1994) *with* 42 U.S.C. § 1997e(a)(1) (1996) (citation amended); citing *Porter*, 534 U.S. at 524 ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory")).

The issue of whether the DOC had issued a ruling on Mr. Boulier's appeal by the time he filed his complaint is thus dispositive. If the DOC had ruled on Mr. Boulier's appeal before July 12, 2024, then he had satisfied the PLRA's mandatory administrative exhaustion requirement, and it would be appropriate for the Court to consider the merits of his case. If the DOC had not issued its decision on appeal by this date, then the Court would be obligated to conclude that Mr. Boulier filed his complaint prematurely and the Court lacks jurisdiction to consider its merits. While it strikes the Court as unlikely, from a practical perspective, that the DOC had ruled on Mr. Boulier's appeal, which the Plaintiff attempted to mail on July 5, 2024 or July

6, 2024, by July 12, 2024, it is hypothetically possible that this occurred, and the Court concludes that, in light of Mr. Boulier's pro se status and the procedural irregularities of this case, the proper approach is to allow Mr. Boulier to address this issue directly before a final ruling on the Defendants' motion to dismiss and the Recommended Decision.

The Court instructs the parties that Mr. Boulier's response will likely be dispositive, for the reasons previously explained, of the Court's final determination of the Recommended Decision and the motion to dismiss. If Mr. Boulier establishes that he had received a final ruling on his administrative appeal by the time he filed his complaint, the Court will likely conclude he satisfied the exhaustion requirement of the PLRA, so as to moot the Defendants' motion to dismiss on this basis. If Mr. Boulier cannot establish that he had such a final ruling by the time he filed his complaint, the Court will be obligated to determine it does not have jurisdiction over this case, and anticipates affirming the Recommended Decision and granting the motion to dismiss.

### B.    Service by Mail

The Court takes an additional moment to address the second jurisdictional issue raised by the Plaintiff: Mr. Boulier concedes the Defendants timely mailed the motion to dismiss and its attachments to his proper address but alleges he only received the attachments due to a postal error. To the Court's knowledge, Mr. Boulier still has not had the opportunity to read the motion to dismiss in its entirety. *Pl.'s Obj.* at 1 ("I never received any 'Motion to Dismiss'"); *Pl.'s Reply* at 3 ("Since I didn't

receive the defendants['] motion to dismiss, and didn't even realize one existed until I receive[d] Magistrate Judge Nivison's R[.] and R[.], I was never afforded the opportunity to respond in a timely matter . . .. In all honesty I've still not received, or even had the opportunity to read the defense[']s motion to dismiss").

Service of a motion, including a motion to dismiss, is governed by Federal Rule of Civil Procedure 5, which mandates service of "a written motion, except one that may be heard ex parte." FED. R. CIV. P. 5(a)(1)(D). The Rule allows, as here, service by "mailing [the motion] to the person's last known address—in which event service is complete upon mailing." FED. R. CIV. P. 5(b)(2)(C). The First Circuit has held "[s]ervice by mail is complete upon mailing, Fed. R. Civ. P. 5(b), even if it is not received." *Rivera v. M/T Fossarina*, 840 F.2d 152, 155 (1st Cir. 1988) (citing, e.g., *Rifkin v. United States Lines*, 24 F.R.D. 122, 123 (S.D.N.Y. 1959) (determining plaintiff's attorney's proffer that a mailing was not delivered "means no more than that the notice was not received," and emphasizing "[s]ervice by mail is complete upon mailing . . . even though it is not received" (citing FED. R. CIV. P. 5(b)); *accord Radkov v. Ashcroft*, 375 F.3d 96, 99 (1st Cir. 2004) (concluding "[e]ven if, as the petitioners contend, the mailing in this case somehow went awry without any fault on the part of the [Bureau of Immigration Affairs], that circumstance alone would not excuse the failure to file a timeous motion to reopen") (citing *Rivera*, 840 F.2d at 155); *Tejada v. Delbalso*, 2020 U.S. Dist. LEXIS 270138, at *1 (M.D. Pa. Jan. 13, 2020) (holding that, under Rule 5(b), "[w]hether or when the plaintiff received his service copy is immaterial"); *Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 552 (E.D. Pa.

1975) ("service is complete upon mailing.  Non-receipt of the paper does not affect the validity of the service")).  "However, the burden of showing that service was made is on the moving party," *Rivera*, 840 F.2d at 155 (citing, e.g., *Daley v. ALIA*, 105 F.R.D. 87 (E.D.N.Y. 1985)), and "[g]iven the important consequences that flow from the service of pleadings and other papers, courts have required the 'strictest and most exacting compliance' with Rule 5(b) when service is made by mail."  *Id.* (quoting *Timmons v. United States*, 194 F.2d 357, 360 (4th Cir.), *cert. denied*, 344 U.S. 844 (1952)).

The parties agree that Defendants timely mailed the motion to dismiss to Mr. Boulier's last known address, in a stamped envelope, by way of the United States Postal Service.  "For service by mail to be valid under Rule 5(b) the pleading or document has to be 'placed in an envelope addressed to the last known address of the opposing attorney—or party when service on a party is proper—and deposited in a United States Post Office or post office box.'"  *Id.* (quoting 4B C. WRIGHT & A. MILLER, FED. PRACTICE AND PROCEDURE § 1148, at 432-33 (1987 ed.) (citation amended)); *see also Brayman v. Maguire*, No. 1:20-cv-00169-JAW, 2022 U.S. Dist. LEXIS 43585, at *1 n.1 (D. Me. Mar. 11, 2022) ("Certified or registered mail is not required for service of . . . papers . . .. [p]ursuant to Fed. R. Civ. P. 5(b)(2)(C)").  Although Mr. Boulier has offered evidence that this mailing was damaged upon his receipt, and thus did not contain the motion to dismiss, Rule 5(b)(2)(C) is clear that "service is complete upon mailing" and thus requires the conclusion that Defendants have satisfied their burden of showing service was proper in accordance with Rule 5(b)(2)(C).  *Rivera*, 840

F.2d at 155. Caselaw is clear that the Defendants have satisfied their burden of service under Rule 5(b) even though Mr. Boulier did not in fact receive the motion to dismiss. *See, e.g., Radkov*, 375 F.3d at 99.

The fact that Mr. Boulier was properly served and the Court has jurisdiction does not, however, mean that it is without authority to remedy Mr. Boulier's claim that the mailing was tampered with and he did not receive notice of its contents. Indeed, although service here complied with the letter of Rule 5(b), some courts facing similar situations have considered whether service is also in compliance with the spirit of the rule. The Eleventh Circuit, for example, held:

> A rebuttable presumption that a document sent by mail was received exists if the document was (1) properly addressed, (2) stamped, and (3) mailed. Upon receiving notice of an attempted delivery, a party has three days to retrieve unsuccessfully delivered mail. To overcome a presumption of receipt, an intended recipient must show that the failure to receive the mail was in no way his fault and that the recipient inquired about late or missing mail.

*Swauger v. DOD – Def. Intelligence Agency*, 852 Fed. Appx. 393, 396 (11th Cir. 2021) (internal citations omitted); *accord Bugoni v. Broward County*, 2021 U.S. Dist. LEXIS 98851, at *5-6 (S.D. Fla. May 25, 2021) (citing *Swauger*, 852 Fed. Appx. at 396); *see also D'Angelo v. Potter*, 221 F.R.D. 289, 293 (D. Mass. 2004) ("The concern of Rules 4 and 5(a) is notice to the [non-moving party] . . ..") (quoting *Varnes v. Glass Bottle Blowers Assoc.*, 674 F.2d 1365, 1368 (11th Cir. 1982); *Barnum v. Welch*, 2025 U.S. Dist. LEXIS 13518, at *1 n. 3 (E.D. La. Jan. 27, 2025) (holding "[w]hether plaintiff actually received [the] motion is immaterial with respect to whether service was proper pursuant to Rule 5(b)(2)(C)," but additionally considering "because plaintiff

timely responded to [the] motion, the Court cannot conclude that plaintiff never received the motion").

This Court finds this reasoning logical. In the instant case, although service was technically proper, Mr. Boulier has argued, and provided support for his argument in the form of a notice from the U.S. Postal Service, that he did not receive the motion to dismiss and through no fault of his own. The reality is that while Mr. Boulier is now aware that the Defendants have filed a motion to dismiss, he still has not had the chance to read that motion in full. Thus, in accordance with the spirit of Rule 5(b), the purpose of which is to provide notice, *see D'Angelo*, 221 F.R.D. at 293, and the First Circuit's inclination to "dispos[e] of claims on the merits rather than on the basis of technicalities," *Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1994) ("Our federal rules promote the disposition of claims on the merits rather than on the basis of technicalities, and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits") (citing *Foman v. Davis*, 371 U.S. 178, 181-82 (1962)), the Court in its discretion ORDERS the Defendants to resend to Mr. Boulier the full contents of its motion to dismiss with attachments within seven days of the date of this order.

### C.    Request for Appointed Counsel

Mr. Boulier's reply concludes by requesting appointed counsel. *Pl.'s Reply* at 11 ("If the Court sees fit, I pray that counsel may be appointed so to protect my

23

interests, and prevent any further claims that motions were sent, or addresses weren't updated").

Criminal defendants have a constitutional right to legal representation, a right which extends to indigent defendants; however, this right only extends as far as the first direct appeal of their conviction. U.S. CONST. amend. VI; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Rossignol*, No. 1:14-cr-00033-JAW-1, 2024 U.S. Dist. LEXIS 83496, at *6 (D. Me. May 8, 2024). By contrast, there is no constitutional right to appointed counsel in a civil case. *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 257 (1st Cir. 2003); *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991) ("There is no absolute constitutional right to a free lawyer in a civil case"). To prevail on a motion for appointed counsel in a civil case, a plaintiff "must demonstrate that he was indigent and that exceptional circumstances were present such that a denial of counsel was likely to result in fundamental unfairness impinging on his due process rights." *DesRosiers*, 949 F.2d at 23. "To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing, *inter alia*, on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself." *Id.* at 24; *accord Manisy v. Maloney*, 283 F. Supp. 2d 307, 317 (D. Mass 2003) (quoting *DesRosiers v. Moran*).

As the merits of Mr. Boulier's constitutional claims pursuant to 42 U.S.C. § 1983 turn on whether he has satisfied the PLRA's administrative exhaustion requirement, the Court will wait to address his request for appointed counsel until

after he has responded to the Court's question regarding exhaustion. *See id.* at 24 (trial courts have "broad discretion" in addressing civil motions for appointment of counsel).

## V.    CONCLUSION

The Court holds in abeyance its final order on the Recommended Decision on Motion to Dismiss (ECF No. 27), Defendants Doug Blauvelt's and Franklin County's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 26), Plaintiff Wayne E. Boulier, II's Objection to Magistrate Judge's Recommended Decision (ECF No. 28), and Mr. Boulier's request for appointed counsel in Plaintiff['s] Response to Defendant[s'] Response to Plaintiff's Objection to the Magistrate Judge's Report + Recommendation at 11 (ECF No. 30), and ORDERS Mr. Boulier to respond within fourteen days to the following questions:

1. On July 12, 2024, the date the Plaintiff filed his complaint in this case, had the Department of Corrections issued a final ruling on the Plaintiff's appeal of the jail administrator's denial of his initial grievance? If so, on what date did the DOC issue its ruling?

2. If the DOC ruled on Mr. Boulier's appeal of the denial of his administrative grievance, what were the contents of that ruling? If Mr. Boulier has a copy of the Department of Corrections' final ruling, he should include a copy of the final ruling in his response.

3. If the Defendants have any information about when the DOC ruled on Mr. Boulier's administrative appeal, the Court ORDERS the Defendants to

respond within the same fourteen-day period, including producing any denial from the DOC within their care, custody, or control.

Further, the Court ORDERS the Defendants to resend to Mr. Boulier the full contents of its motion to dismiss, Defendants Doug Blauvelt's and Franklin County's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 26), with attachments, within seven days of the date of this order.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of June, 2025