UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| WAYNE E. BOULIER, II, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-00250-JAW |
| | ) | |
| DOUG BLAUVELT, *in his official* | ) | |
| *Capacity as Major/Jail* | ) | |
| *Administrator*, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER ON RECOMMENDED DECISION AND OBJECTION**

In a suit brought by an incarcerated individual against a county jail and its administrator, a United States magistrate judge recommended the federal district court grant the defendants' motion to dismiss claims of civil rights violations against them on the grounds that the plaintiff had not complied with the Prison Litigation Reform Act's administrative exhaustion requirements. After requesting supplemental briefing on the issue from the parties, the court concludes administrative relief was not available to the plaintiff within the meaning of that federal statute and thus reverses the recommended decision and dismisses the defendants' motion to dismiss. The court also dismisses the plaintiff's request for appointed counsel as premature.

## I. BACKGROUND

On July 12, 2024, Wayne E. Boulier, II, an incarcerated individual, filed a civil complaint pursuant to 42 U.S.C. § 1983 against Doug Blauvelt, in his official capacity as jail administrator of the Franklin County Sheriff Department, and the Franklin

County Jail (together, the Defendants), alleging violations of his rights guaranteed under the Fourth and Eighth Amendments to the United States Constitution. *Compl. for Violation of Civ. Rights* at 1-3 (ECF No. 1) (*Compl.*). Mr. Boulier amended his complaint on September 19, 2024, clarifying his allegation that the Defendants allegedly subjected him to repeated unconstitutional strip searches during his period of incarceration in Franklin County Jail. *Am. Compl.* (ECF No. 20). Mr. Boulier claims in his amended complaint that he was subjected to strip searches after participating in meetings with his attorney and court officers over Zoom, during which "Petitioner never even left the jail, in some instances, never even leaving the booking area" and was "in constant observation of in person correctional staff within feet of the Petitioner," in addition to being immobilized by five-point restraints. *Id.* at 2. He proffers that these strip searches were unwarranted, violative of his Fourth and Eighth Amendment rights, and their sole purpose was "a form of power exhibition." *Id.* at 6.

On December 11, 2024, the Defendants jointly moved to dismiss Mr. Boulier's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim on which relief can be granted, alleging Mr. Boulier's claim was unripe because he had not exhausted his administrative remedies prior to filing his complaint in federal court as required by the Prison Litigation Reform Act (PLRA), codified at 42 U.S.C. § 1997e(a). *Defs. Doug Blauvelt's and Franklin Cnty.'s Mot. to Dismiss Pl.'s Am. Compl. Pursuant to Fed. R. Civ. P. 12(b)(6)* (ECF No. 26) (*Defs.'*

*Mot. to Dismiss*).  Mr. Boulier did not respond to the motion to dismiss, which the Court took under advisement on January 13, 2025.

On January 30, 2025, the United States Magistrate Judge recommended the Court grant the Defendants' unopposed motion and dismiss Mr. Boulier's amended complaint based on his failure to exhaust his administrative remedies, a statutory prerequisite to his requested relief.  *Recommended Decision on Mot. to Dismiss* at 2 (ECF No. 27) (*Rec. Dec.*) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court")).  The Magistrate Judge states further that the United States Supreme Court has ruled § 1997e(a) requires "proper exhaustion" of a prisoner's administrative remedies, which "demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Id.* (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006)).

Turning to the instant case, and upon reviewing the policies and procedures for inmate grievances the Defendants attached to their motion to dismiss, the Magistrate Judge concludes the Franklin County Jail's administrative grievance process "contemplates an initial grievance to be decided by the jail administrator and, if unsuccessful, an appeal to the Department of Corrections [(DOC)]."  *Id.* at 3 (citing *Defs.' Mot. to Dismiss*, Attach. 1, *Franklin Cnty. Jail Grievance Pol'y*).  The Magistrate Judge observes that Mr. Boulier's amended complaint reports that he filed an initial grievance on July 1, 2024, which Mr. Blauvelt, in his official capacity as jail

administrator, denied the same day, *id.* (citing *Defs.' Mot. to Dismiss*, Attach. 2, *Boulier Grievance Form*), and then, on July 12, 2024, Mr. Boulier filed his complaint in this Court. *Id.* The Magistrate Judge "infer[red] from the short time that elapsed between the date the jail administrator denied the grievance [on July 1, 2024] and the date Plaintiff filed this action [on July 12, 2024] that Plaintiff did not file an appeal to the [DOC]," as the PLRA requires. *Id.* On this ground, the Magistrate Judge recommended the Court grant the Defendants' motion to dismiss. *Id.* at 1-4.

Because a Magistrate Judge reviewed the Defendants' motion pursuant to 28 U.S.C. § 636(b)(1)(B), Mr. Boulier had a right to de novo review by the district judge upon filing an objection within fourteen days of being served. *See* 28 U.S.C. § 636(b)(1)(C). On February 18, 2025, Mr. Boulier objected to the Recommended Decision, stating that he never received the Defendants' motion to dismiss due to a postal error and that he first learned of that motion upon receipt of the Recommended Decision. *Obj. to Recommended Decision* at 1 (ECF No. 28) (*Pl.'s Obj.*).[1] His objection asks the Court to overrule the Recommended Decision on the grounds that, first, he

---

[1]    The Magistrate Judge issued his Recommended Decision on January 30, 2025, *Rec. Dec.*, and Mr. Boulier's objection to the Recommended Decision was not filed until February 18, 2025. *Pl.'s Obj.* It is not clear from the docket when Mr. Boulier was served and, thus, the Court is unsure whether he filed his objection within fourteen days of service as 28 U.S.C. § 636(b)(1)(C) instructs. However, the First Circuit has directed district courts reviewing pro se pleadings to construe these submissions liberally, *see Sanchez v. Brown Univ.*, No. 23-1983, 2024 U.S. App. LEXIS 15530, at *1 (1st Cir. 2024) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and has indicated its preference to "dispos[e] of claims on the merits rather than on the basis of technicalities." *Kuehl v. FDIC*, 8 F.3d 905, 908 (1st Cir. 1994) ("Our federal rules promote the disposition of claims on the merits rather than on the basis of technicalities, and courts should be reluctant to impose a dismissal with prejudice for a rules violation that is neither persistent nor vexatious, particularly without some review of the merits") (citing *Foman v. Davis*, 371 U.S. 178, 181-82 (1962)). In line with the First Circuit's instructions, the Court in its discretion construes Mr. Boulier's objection to have been timely filed and reviews its contents for their merits, conducting a de novo review of the objected-to portions of the Recommended Decision.

did not have an opportunity to oppose the motion to dismiss given this mailing error and, second, the Defendants are incorrect that he did not satisfy the PLRA's administrative exhaustion requirement. *Id.* at 1-2. Defendants responded in opposition to Mr. Boulier's objection on February 26, 2025. *Resp. of Defs. Blauvelt and Franklin Cnty.[] [] to Pl.'s Obj. to the Mag. J.'s R. & R.* (ECF No. 29) (*Defs.' Resp.*). On March 12, 2025, Mr. Boulier replied, clarifying that he took steps to appeal Mr. Blauvelt's denial of his initial grievance to the DOC on either July 5, 2024 or July 6, 2024 but, given his concern that his appeal would not properly be mailed and that his continued efforts for administrative redress would be futile, he promptly moved for relief in this Court on July 12, 2024. *See Pl. Resp. to Defs.' Resp. to Pl.'s Obj. to the Mag. J.'s R. & R.* at 2 (ECF No. 30) (*Pl.'s Reply*) ("I decided to fil[e] my complaint with the court the day I learned there was no record of my letter to DOC in the Franklin County Mail log, and I was told in an aggressive tone by Sgt. Coleman that if I kept pushing the issue, I'd be doing it from segregation or maximum security housing"). Mr. Boulier's reply also includes a request for appointed counsel. *Id.* at 11.

On June 10, 2025, the Court issued a preliminary order on the Recommended Decision, ordering the Defendants to resend the full contents of their motion to dismiss to Mr. Boulier within seven days, and ordering the Plaintiff, within fourteen days, to clarify whether he had fully complied with the PLRA's exhaustion requirement prior to filing his complaint in federal court. *Prelim. Order on Recommended Decision, Obj., and Req. for Appointed Counsel* (ECF No. 32) (*Prelim. Order*). Observing that the record did not clearly indicate whether the Plaintiff

satisfied the requirement in 42 U.S.C. § 1997e(a) that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted," *id.* at 14 (quoting 42 U.S.C. § 1997e(a)), and that "there is no 'futility exception' to the PLRA exhaustion requirement," *id.* at 15 (quoting *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002)), the Court held in abeyance its final order on the Recommended Decision and ordered the parties to respond to the following questions:

1. On July 12, 2024, the date the Plaintiff filed his complaint in this case, had the DOC issued a final ruling on the Plaintiff's appeal of the jail administrator's denial of his initial grievance? If so, on what date did the DOC issue its ruling?

2. If the DOC ruled on Mr. Boulier's appeal of the denial of his administrative grievance, what were the contents of that ruling? If Mr. Boulier has a copy of the Department of Corrections' final ruling, he should include a copy of the final ruling in his response.

3. If the Defendants have any information about when the DOC ruled on Mr. Boulier's administrative appeal, the Court ORDERS the Defendants to respond within the same fourteen-day period, including producing any denial from the DOC within their care, custody, or control.

*Id.* at 25-26.

The Court instructed the parties that their response to these questions "will likely be dispositive . . . of the Court's final determination of the Recommended Decision and the motion to dismiss." *Id.* at 19. The Court explained:

> If Mr. Boulier establishes that he had received a final ruling on his administrative appeal by the time he filed his complaint, the Court will likely conclude he satisfied the exhaustion requirement of the PLRA, so as to moot the Defendants' motion to dismiss on this basis. If Mr. Boulier cannot establish that he had such a final ruling by the time he filed his complaint, the Court will be obligated to determine it does not have jurisdiction over this case, and anticipates affirming the Recommended Decision and granting the motion to dismiss.

*Id.* Finally, as the administration exhaustion issue implicates Mr. Boulier's request for appointment of counsel, the Court's preliminary order also held its ruling on that motion in abeyance pending the parties' responses. *Id.* at 24-25.

On June 16, 2025, the Defendants responded in compliance. *Resp. of Defs. Blauvelt and Franklin Cnty. to the Ct.'s June 10 Order* at 1 (ECF No. 33) (*Defs.' Prelim. Order Resp.*). Mr. Boulier responded on June 26, 2025.[2] *Resp. to JAW Prelim. Order on Recommended Decision* (ECF No. 35) (*Pl.'s Prelim. Order Resp.*).[3]

---

[2]    Mr. Boulier's response was due on June 24, 2025. *Prelim. Order* at 26. On June 25, 2025, the Clerk of Court docketed a letter from Mr. Boulier in which he shares that he only recently received the Court's order to respond and requests additional time to address the Court's concerns. *Letter* (ECF No. 34). Although Mr. Boulier's response was docketed two days after the Court's deadline, the Court, in its discretion, treats it as timely filed.

[3]    On June 26, 2025, the Defendants filed a surreply to the Court's preliminary order. *Resp. of Defs. Blauvelt and Franklin Cnty. to the Pl.'s June 19 Letter and June 26 Filing* (ECF No. 36) (*Defs.' Surreply*). However, the District of Maine Local Rules do not allow a party to file a surreply and, here, the Defendants neither requested nor were granted leave to surreply. *Mitchell v. Liberty*, CV-08-341-B-W, 2009 U.S. Dist. LEXIS 8634, at *2 (D. Me. Feb. 5, 2009) (citing D. ME. LOC. R. 7) ("The Local Rules do not allow a party to file a surreply to the moving party's reply [and] [t]he Court, therefore, strikes [the Plaintiff's] surreply as unauthorized"); *In re Light Cigarettes Mktg. Sales Practices Litig.*, 832 F.2d 74, 78 (D. Me. 2011) ("Absent highly unusual circumstances, sur-replies are not favored. If the Court granted the Defendants the right to sur-reply, the Plaintiffs would no doubt ask for a right to file a sur-response.").

## II.    THE PARTIES' POSITIONS ON THE PRELIMINARY ORDER

### A.    The Defendants' Response

Responding to the questions the Court posed in its preliminary order, the Defendants report that they mailed a second copy of the motion to dismiss to Mr. Boulier via certified mail on June 10, 2025, and further, "[w]ith regard to Boulier's alleged appeal to the [Maine Department of Corrections (MDOC)] concerning the July 2024 denial of his grievance, the Defendants searched their files but did not locate any such appeal nor any denial from the MDOC."  *Defs.' Prelim. Order Resp.* Defendants add, "defense counsel contacted Stephen French, Manager of Correctional Operations at the MDOC, to inquire whether the Department has any record of an

---

Although the Local Rules instruct the Court to strike the Defendants' surreply, the Court, being of a practical mind, observes that whether it considers the surreply does not change the result. In essence, the surreply argues that the Court may not consider Mr. Boulier's "extensive discussion alleging how he purportedly went about appealing Blauvelt's denial of his grievance" in the Plaintiff's response to the Court's preliminary order because "none of these allegations are contained in Boulier's Amended Complaint, which was the operative pleading in which he had the opportunity to state his allegations against the Defendants."  *Defs.' Surreply* at 2.  The Court does not agree.  First, Mr. Boulier's amended complaint states "I did in fact attempt to bring light to the above mentioned violation of my [F]ourth [A]mendment rights, by and through the administrative remedy process."  *Am. Compl.* at 10.  This is, in addition, neither the first time the Defendants have raised this point, nor the first time the Court has rejected it.  *See Defs.' Resp.* at 2 (arguing the Court should not consider Court should not consider Mr. Boulier's claim that he administratively exhausted based on their allegation that he did not address exhaustion in his amended complaint and, in ruling on a motion to dismiss, the Court is bound to consider the factual record as stated in that filing); *Prelim. Order* at 17 n.5 ("Defendants are incorrect in their factual assertion that Mr. Boulier did not discuss administrative exhaustion in his amended complaint") (citing *Am. Compl.* at 10).  Second, the Court in its preliminary order specifically invited Mr. Boulier to respond to the issue of administrative exhaustion, clarifying whether he had appealed Mr. Blauvelt's denial of his initial grievance before filing suit in this Court.  *Prelim. Order* at 25-26.  Third, and most decisively, "PLRA exhaustion is 'not jurisdictional,'" and thus "not a 'pleading requirement,' which is why 'inmates are not required to specially plead or demonstrate exhaustion in their complaints.'  *Perttu v. Richards*, 222 L. Ed. 2d 108, 119 (June 18, 2025) (quoting *Jones v. Block*, 549 U.S. 199, 216 (2007)).

In short, notwithstanding that the Defendants had no right to file a surreply, the Court is not persuaded by the Defendants' arguments in that filing that Mr. Boulier did not first raise administrative exhaustion in his amended complaint and that the Court may not consider Mr. Boulier's response complying with the Court's preliminary order.

appeal being filed by Boulier in July 2024," and "Mr. French replied that he has no record of a complaint sent to MDOC by anyone named Boulier in 2024." *Id.* (citing *id.*, Attach. 1, *Ex. 1*).

### B.    Wayne E. Boulier II's Response

After reminding the Court that he is proceeding in this matter without the assistance of counsel, Mr. Boulier responds to the Court's questions posed in the preliminary order, stating "the Defendants' assertion that [he] had failed to exhaust all available administrative remedies when [he] had filed this complaint with the Court on July 12th 2024, is in fact incorrect as any further remedy was unavailable per the requirements of Franklin County Policy and procedure, and actions taken." *Pl.'s Prelim. Order Resp.* at 1.

Mr. Boulier then restates the facts included in his amended complaint and objection to the Recommended Decision, detailing his filing of the initial grievance with the jail administrator on July 1, 2024, Mr. Blauvelt's prompt denial of the same, Mr. Boulier's drafting of an appeal to the DOC, after which he "put it in an envelope which was postage paid, addressed it with the name and address provided to [him] [by Officer Brooks], and handed the envelope to Franklin County Officer Jason Hamlin . . .. on either July 6th or 7th, 2024." *Id.* at 2-3. He says that, after waiting several days "to allow ample time for [his] outgoing mail to be processed," he "attempt[ed] to secure an official receipt or some sort of legal verification that [he] had in fact mailed [his] appeal to [DOC], by respectfully requesting a copy of the page of the mail log which [his] letter to [MDOC] was logged on, or any written receipt that

[his] letter had in fact been mailed." *Id.* at 3-4.  Mr. Boulier reports that Officer Brooks responded "by . . . informing [him] that [his] letter to [DOC] was in fact not in the mail log, and there was no outgoing mail yet to be processed and logged," a conversation leading the Plaintiff to conclude that his appeal "had literally disappeared." *Id.*

Mr. Boulier additionally alleges that he voiced his displeasure to corrections officers, and "it was at that time that Sgt. Coleman said '[t]he Major has answered your grievance, and that's the end of discussion," again threatening Mr. Boulier that, if he did not stop "complaining about the strip search policy," he would spend the remainder of his period of incarceration in segregation. *Id.*  He says "[i]t was at that time [that] [he] made the conscious decision that per the requirements of the Franklin County Jail grievance policy and procedure, no further remedy was available." *Id.* at 5.

Turning to his legal argument, Mr. Boulier cites a decision from the United States District Court for the Southern District of New York, which in turn cites caselaw from the Second Circuit Court of Appeals instructing district courts determining whether an inmate had satisfied the PLRA's administrative exhaustion requirements to take into account "whether there are any special circumstances that may justify a failure to exhaust." *Id.* (citing *Veloz v. New York*, 339 F. Supp. 2d 505, 513 (S.D.N.Y. 2004) (citing *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004)) (citations corrected).  He further cites a Ninth Circuit decision which he says ruled that "[e]xhaustion may be excused where prisoner took reasonable and appropriate

steps, but was precluded by prison staff." *Id.* (citing *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010)) (citation corrected).  Mr. Boulier argues that, applying this jurisprudence to his own case, the Court should determine that administrative exhaustion was not "available" to him and, thus, allow him to proceed with his suit in this Court.  *Id.* at 6-10.

Citing authority from the United States Supreme Court, he says that an administrative remedy is "unavailable when despite what regulations or guidance materials may promise, [their policy] operates as a simple dead end with officers unable or consistently unwilling to provide any relief to aggrieved inmates, or when an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use, i.e. when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation."  *Id.* at 10 (citing *Ross v. Blake*, 578 U.S. 632, 643 (2016)) (citation corrected).  Mr. Boulier argues his factual allegations establish he exhausted all "available" remedies to him.  *Id.*

## III.  LEGAL STANDARD

The Plaintiff filed a timely objection to the Magistrate Judge's Recommended Decision, and the Court thus "shall make a de novo determination of those portions of the . . . recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C); *see also* 28 U.S.C. § 636(b)(1)(B).  At the same time, the Court is "only obliged to perform de novo review of disputed portions of the report and recommendation."  *United States v. J.C.D.*, 861 F.3d 1, 6 (1st Cir. 2017).  Under this standard, the Court reviews factual

findings for clear error, *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 4 (1st Cir. 1999), and gives plenary review to pure questions of law. *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 15 (1st Cir. 2010).

## IV. DISCUSSION

As the Court explained in its June 10, 2025 preliminary order, 42 U.S.C. § 1997e(a) provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).

In the case at bar, it is undisputed that Mr. Boulier's 42 U.S.C. § 1983 claim is an action "with respect to prison conditions" under § 1997e(a). *See Porter*, 534 U.S. at 532 (holding that the PLRA's exhaustion requirement extends to "all inmate suits about prison life"). Instead, the Court's preliminary order observed the present crux of the dispute concerns whether Mr. Boulier has established his satisfaction of the statute's exhaustion requirement by the time he filed his suit in this Court, and, alternatively, whether those administrative procedures were "available" to him for

purposes of § 1997e(a), due to the alleged futility of pursuing an administrative appeal. *Prelim. Order* at 14-15.

On the first issue, as the Court addressed in its preliminary order, the First Circuit has held that the language of 42 U.S.C. § 1997e(a) "clearly contemplates exhaustion *prior* to the commencement of the action as an indispensable requirement," and that "a suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Prelim. Order* at 17 (quoting *Medina-Claudio*, 292 F.3d at 36) (emphasis in original).

On the record before it contemporaneous to the preliminary order, the Court agreed with the Magistrate Judge's inference that it was unlikely the Plaintiff filed an appeal of Mr. Blauvelt's July 1, 2024 denial of the initial grievance to the DOC before commencing suit in this Court on July 12, 2024, as 42 U.S.C. § 1997e(a) requires. *Id.* (citing *Medina-Claudio*, 292 F.3d at 36). However, the Court held its final order on the Recommended Decision in abeyance to allow the parties to clarify whether Mr. Boulier had received a final ruling on his administrative appeal to DOC before he filed his complaint in this Court. *Id.* at 18-19 ("While it strikes the Court as unlikely, from a practical perspective, that the DOC had ruled on Mr. Boulier's appeal, which the Plaintiff attempted to mail on July 5, 2024 or July 6, 2024, by July 12, 2024, it is hypothetically possible that this occurred, and the Court concludes that, in light of Mr. Boulier's pro se status and the procedural irregularities of this case,

the proper approach is to allow Mr. Boulier to address this issue directly before a final ruling on the Defendants' motion to dismiss and the Recommended Decision").

The parties' responses to the preliminary order agree that the DOC had not addressed on appeal Mr. Blauvelt's denial of Mr. Boulier's initial grievance before the Plaintiff commenced suit in this Court on July 12, 2024. *See Pl.'s Resp. to Prelim. Order* at 1-14; *Defs.' Resp. to Prelim. Order* at 1. However, they disagree on the implications of this fact on Mr. Boulier's present action in this Court. The Defendants continue to insist that Mr. Boulier has not satisfied the PLRA's administrative exhaustion requirement, so as to make his suit improper, *Def.'s Resp. to Prelim. Order* at 1, while Mr. Boulier argues he satisfied the administrative remedies "available" to him and, thus, should be allowed to proceed with this action in federal court. *Pl.'s Resp. to Prelim. Order* at 14-15.

As the Court explained in its preliminary order, "there is no 'futility exception' to the PLRA exhaustion requirement." *Medina-Claudio*, 282 F.3d at 35 (citing *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the PLRA mandates exhaustion regardless of the relief offered through administrative procedures)). However, in his response to the preliminary order, Mr. Boulier directs the Court to *Ross v. Blake*, 578 U.S. 632 (2016), in which the Supreme Court affirmed that there is no futility exception, but "underscore[d] [the PLRA's] built-in exception to the exhaustion requirement: A prisoner need not exhaust remedies if they are not 'available.'" *Ross*, 578 U.S. at 636; *id.* at 638-39 ("An inmate 'shall' bring 'no action' . . . absent exhaustion of available administrative remedies. . . . As later discussed, that edict

14

contains one significant qualifier: the remedies must indeed be 'available' to the prisoner. . ..  But aside from that exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust—irrespective of any 'special circumstances.'").

More specifically, the *Ross* Court emphasized that the statute's "mandatory language means a court may not excuse a failure to exhaust, even to take such [special] circumstances into account," *id.* at 638 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining that "[t]he mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion"); *McNeil v. United States*, 508 U.S. 106, 111 (1993) ("We are not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies")), adding that "[w]e have taken just that approach in construing the PLRA's exhaustion provision—rejecting every attempt to deviate . . . from its textual mandate." *Id.* at 639-40 (citing, e.g., *Porter*, 534 U.S. at 520). However, in *Ross*, the Supreme Court nonetheless held that its "rejection of the . . . 'special circumstances' exception does not end this case" because, under § 1997e(a), "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Id.* at 642.  The *Ross* Court observed that this "limitation on an inmate's duty to exhaust . . . has real content," explaining "the ordinary meaning of the word 'available' is "'capable of use for the accomplishment of a purpose," and that which "is accessible or may be obtained."'" *Id.* (quoting *Booth*, 532 U.S. at 737-78) (in turn quoting Webster's Third New International Dictionary 150 (1993)).

"Accordingly," the Supreme Court held, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* (quoting *Booth*, 532 U.S. at 738).

Elaborating on its conclusion in *Ross*, the Supreme Court "note[d] as relevant here three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," *id.* (citing *Booth*, 532 U.S. at 736, 738); (2) "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," because although "some mechanism exists to provide relief, . . . no ordinary prisoner can discern or navigate it"); and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. Expanding on this third scenario, the Supreme Court said, "appellate courts have addressed a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures," "render[ing] the administrative process unavailable." *Id.* at 644 & n.3 (citing *Davis v. Hernandez*, 798 F. 3d 290, 295 (5th Cir. 2015) ("Grievance procedures are unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process" (emphasis deleted); *Schultz v. Pugh*, 728 F. 3d 619, 620 (7th Cir. 2013) ("A remedy is not available, therefore, to a prisoner

16

prevented by threats or other intimidation by prison personnel from seeking an administrative remedy"); *Pavey v. Conley*, 663 F. 3d 899, 906 (7th Cir. 2011) ("[I]f prison officials misled [a prisoner] into thinking that . . . he had done all he needed to initiate the grievance process," then "[a]n administrative remedy is not 'available'"); *Tuckel v. Grover*, 660 F. 3d 1249, 1252-53 (10th Cir. 2011) ("[W]hen a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available'"); *Goebert v. Lee County*, 510 F. 3d 1312, 1323 (11th Cir. 2007) (If a prison "play[s] hide-and-seek with administrative remedies," then they are not "available") (citations amended)).  In these instances, the *Ross* Court determined, "§[ ]1997e(a) poses no bar." *Id.* at 644.

In the instant case, the question for this Court is thus whether "§[ ]1997e(a) poses no bar" to Mr. Boulier, *id.* at 644, because administrative remedies were not "available" to him under the Supreme Court's conception of the term in *Ross*.  Of the three exceptions recognized by the *Ross* Court, the third is the most apt to Mr. Boulier's circumstances.  Mr. Boulier does not allege facts allowing the Court to conclude prison officials at Franklin County Jail are either "unable or consistently unwilling to provide any relief to aggrieved inmates," *see id.* at 643, ruling out the first scenario.  Similarly, he does not attribute his failure to exhaust to the Franklin County Jail's "opaque" grievance procedure, mooting the second.  *See id.*  The Court proceeds to consider whether the administrative process was "render[ed] . . . unavailable" because prison officials at Franklin County Jail "thwart[ed] inmates

17

from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *See id.* at 644.

As an initial matter, the Court notes further the "settled premise" that "PLRA exhaustion is a standard affirmative defense," which is "not jurisdictional." *Perttu*, 222 L. Ed. 2d at 119 (citing and quoting *Jones*, 549 U.S. at 216); *id.* (quoting *Jones*, 549 U.S. at 212) ("PLRA exhaustion is not a pleading requirement, which is why inmates are not required to specially plead or demonstrate exhaustion in their complaints") (internal quotation marks omitted)). The Court thus considers the facts alleged in not only Mr. Boulier's amended complaint but also in his objection to the Recommended Decision, his reply to the Defendants' opposition to his objection, and his response in compliance with the Court's preliminary order.

As the Court recounted in its preliminary order, the parties agree that Mr. Boulier properly filed an initial grievance with Mr. Blauvelt on July 1, 2024, which Mr. Blauvelt denied the same day, *Rec. Dec.* at 3 (citing *Boulier Grievance Form*), and that on July 12, 2024, Mr. Boulier filed a complaint in this Court. *Compl.* Mr. Boulier alleges that he attempted to mail an appeal to the DOC around July 5, 2024, July 6, 2024, or July 7, 2024. *Pl.'s Obj.* at 2; *Pl.'s Prelim. Order Resp.* at 2-3. In their responses to the preliminary order, the parties also agree that the DOC has not issued a final order on Mr. Blauvelt's denial. *Pl.'s Prelim. Order Resp.* at 1-14; *Defs.' Prelim. Order Resp.* at 1. Mr. Boulier additionally maintains that he at least attempted to mail his appeal to the DOC through the Franklin County Jail prison mail system. *See Pl.'s Obj.* at 2; *Pl.'s Prelim. Order Resp.* at 2-3.

18

In these filings, Mr. Boulier explains "[his] decision to file the case [when he did] was made because when [he] requested a receipt, or a photocopy of the mail log of my letter to Mr. French [at the DOC]. . . it was denied to [him] by Sgt. Coleman," and "it was at this time that the comment was made to [him] that 'the policy (in regard to strip searches) was what it is and if [he] didn't stop complaining about it, [he]'d be doing the rest of [his] time in segregation.'" *Pl.'s Obj.* at 2.  His response to the Court's preliminary order adds more detail, alleging that on July 6, 2024 or July 7, 2024, he "put [his appeal] in an envelope which was postage paid, addressed it with the name and address provided to [him] [by Officer Brooks], and handed the envelope to Franklin County Officer Jason Hamlin." *Pl.'s Prelim. Order Resp.* at 2-3.  Mr. Boulier says that, after waiting several days "to allow ample time for [his] outgoing mail to be processed," he "attempt[ed] to secure an official receipt or some sort of legal verification that [he] had in fact mailed [his] appeal to [DOC], by respectfully requesting a copy of the page of the mail log which [his] letter to [DOC] was logged on, or any written receipt that [his] letter had in fact been mailed." *Id.* at 3-4.  Mr. Boulier reports that Officer Brooks responded "by . . . informing [him] that [his] letter to [DOC] was in fact not in the mail log, and there was no outgoing mail yet to be processed and logged," a conversation leading the Plaintiff to conclude that his appeal "had literally disappeared." *Id.*

Mr. Boulier alleges that, upon learning his appeal had not been mailed, he voiced his displeasure to corrections officers, and "it was at that time that Sgt. Coleman said '[t]he Major has answered your grievance, and that's the end of

discussion," and threatening Mr. Boulier that, if he did not stop "complaining about the strip search policy," he would spend the remainder of his period of incarceration in segregation. *Pl.'s Prelim. Order Resp.* at 4; *see also Pl.'s Reply* at 2 ("As I said in my previous response, I decided to fil[e] my complaint with the court the day I learned there was no record of my letter to DOC in the Franklin County Mail log, and I was told in an aggressive tone by Sgt. Coleman that if I kept pushing the issue, I'd be doing it from segregation or maximum security housing"). Furthermore, Mr. Boulier says "[i]t was at that time [that] [he] made the conscious decision that per the requirements of the Franklin County Jail grievance policy and procedure, no further remedy was available." *Id.* at 5. Given Mr. Blauvelt's denial of his request, the corrections officer's alleged refusal to provide a receipt of his appeal, and the retaliatory threat of segregation, Mr. Boulier says that he filed his complaint in this Court because "[he] felt [he] had no further options for relief." *Pl.'s Obj.* at 3.

Based on the foregoing, the Court concludes Mr. Boulier alleges administrative exhaustion was not "available" to Mr. Boulier because Franklin County Jail officials "thwart[ed] [him] from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Mr. Boulier does not seek to bypass the PLRA's administrative exhaustion requirement on the ground that seeking administrative relief would be futile. He does not claim, for example, that he did not file an initial grievance, or file an appeal to the DOC, because he believed his grievance would be denied by the warden or his appeal would be denied by the DOC. Instead, Mr. Boulier alleges he took steps in search of administrative redress in

20

accordance with Franklin County Jail's policy, including attempting to mail his appeal of Mr. Blauvelt's denial, and was thwarted from doing so. Not only does he raise an issue with the prison mail system, but he additionally alleges corrections officers retaliatorily threatened him with segregation or maximum-security housing if he continued to pursue his appeal. *See Ross*, 578 U.S. at 644 n.3 (citing, e.g., *Schultz*, 728 F. 3d at 620 ("A remedy is not available, therefore, to a prisoner prevented by threats or other intimidation by prison personnel from seeking an administrative remedy"); *Tuckel*, 660 F. 3d at 1252-1253 ("[W]hen a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available'")). Consistent with the Supreme Court's instruction in *Ross*, this Court now concludes, in Mr. Boulier's case, that "§[ ]1997e(a) poses no bar" because administrative relief was unavailable to him, and he may proceed with this action in federal court. *Id.* at 644.

After de novo review, the Court reverses the Magistrate Judge's recommendation that dismissal is required due to the Plaintiff's failure to comply with the PLRA's administrative exhaustion requirement, dismisses the Defendants' motion to dismiss Mr. Boulier's complaint based on his failure to exhaust his administrative remedies, and grants the Plaintiff's objection to the Recommended Decision on the ground that administrative exhaustion was unavailable to him within the meaning of § 1997e(a).

## V.    APPOINTED COUNSEL

Mr. Boulier's reply concludes by requesting appointed counsel.  *Pl.'s Reply* at 11 ("If the Court sees fit, I pray that counsel may be appointed so to protect my interests, and prevent any further claims that motions were sent, or addresses weren't updated").    Criminal defendants have a constitutional right to legal representation, a right which extends to indigent defendants; however, this right only extends as far as the first direct appeal of their conviction.  U.S. CONST. amend. VI; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *United States v. Rossignol*, No. 1:14-cr-00033-JAW-1, 2024 U.S. Dist. LEXIS 83496, at *6 (D. Me. May 8, 2024).  By contrast, there is no constitutional right to appointed counsel in a civil case.  *Maroni v. Pemi-Baker Reg'l Sch. Dist.*, 346 F.3d 247, 257 (1st Cir. 2003); *accord DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991) ("There is no absolute constitutional right to a free lawyer in a civil case").  To prevail on a motion for appointed counsel in a civil case, a plaintiff "must demonstrate that he was indigent and that exceptional circumstances were present such that a denial of counsel was likely to result in fundamental unfairness impinging on his due process rights."  *DesRosiers*, 949 F.2d at 23.  "To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing, *inter alia*, on the merits of the case, the complexity of the legal issues, and

the litigant's ability to represent himself." *Id.* at 24; *accord Manisy v. Maloney*, 283 F. Supp. 2d 307, 317 (D. Mass 2003) (quoting *DesRosiers v. Moran*).

The merits of Mr. Boulier's Fourth and Eighth Amendment arguments have not been before the Court, and the Defendants have not responded to their substance. The Court thus dismisses without prejudice the Plaintiff's request for counsel, which requires the Court assess the merits of his constitutional claims brought pursuant to 42 U.S.C. § 1983. If these issues are presented to the Court and the Court determines that the Plaintiff's claims are potentially meritorious, Mr. Boulier may renew his request for appointed counsel and the Court will address his request at that time.

## VI.  CONCLUSION

After de novo review, the Court REVERSES the Recommended Decision on Motion to Dismiss (ECF No. 27), DISMISSES without prejudice Defendants Doug Blauvelt's and Franklin County's Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 26), and GRANTS Plaintiff Wayne E. Boulier, II's Objection to Magistrate Judge's Recommended Decision (ECF No. 28).

The Court DISMISSES without prejudice the request for appointed counsel in Plaintiff Response to Defendants' Response to Plaintiff's Objection to the Magistrate Judge's Report + Recommendation at 11 (ECF No. 30).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 9th day of July, 2025